**Eileen WILLIAMS, Plaintiff,**

v.

**Louis W. SULLIVAN, M.D., Secretary of the Department of Health and Human Services, Defendant.**

No. 86 Civ. 2129 (RJW).

United States District Court,
S.D. New York.

Sept. 25, 1991.

Victor Fusco, Scheine, Fusco, Brandenstein & Rada, Hempstead, N.Y., for plaintiff.

Otto Obermaier, U.S. Atty., S.D.N.Y., New York City by Lorraine S. Novinski, Sp. Asst. U.S. Atty., for defendant.

## MEMORANDUM DECISION

ROBERT J. WARD, District Judge.

Plaintiff Eileen Williams originally brought this action pursuant to section 205(g) of the Social Security Act (the "SSA") as amended, 42 U.S.C. § 405(g), seeking judicial review of a final decision by defendant Secretary of Health and Human Services (the "Secretary" of "HHS") denying her application for widow's insurance benefits. On April 29, 1987, this Court remanded the action to the Secretary for further administrative proceedings. The Secretary subsequently awarded plaintiff widow's insurance benefits. Plaintiff's counsel now petitions the Court for an award of attorney's fees, pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412, in connection with this action. For the reasons that follow, the Court grants counsel's petition as modified below.

## BACKGROUND

On February 12, 1983, while on the way to her job as a therapeutic aide at the Bronx Psychiatric Center, Williams slipped and fell on some ice, injuring her right knee.

Williams filed applications for widow's insurance benefits, under sections 202(e) and 223 of the SSA, on June 23, 1983, September 12, 1984, and January 18, 1985, alleging the onset of disability as of February 12, 1983, the date she slipped and fell. The Secretary denied her applications initially and upon reconsideration. After the last denial, plaintiff timely requested an administrative hearing, which was held before Administrative Law Judge ("ALJ") Irwin Bernstein on July 30, 1985. In a written decision, dated September 23, 1985, ALJ Bernstein found that plaintiff was not disabled within the meaning of the SSA. When the Appeals Council denied plaintiff's request to review ALJ Bernstein's decision, that decision became the Secretary's final determination.

Plaintiff then filed this action for judicial review of the Secretary's final determination. By order dated April 29, 1987, this Court reversed and vacated the Secretary's determination and remanded the action to the Secretary for further administrative proceedings in accordance with the Court's decision. *Williams v. Bowen*, 660 F.Supp. 192 (S.D.N.Y.1987)

A supplemental hearing was held on September 26, 1988 before ALJ Jeffrey W. Kohlman, who subsequently issued a recommended decision, dated October 19, 1988, finding that Williams had been disabled since February 12, 1983, and was therefore entitled to disability insurance benefits under the SSA. This became the final decision of the Secretary when it was adopted by the Appeals Council on December 12, 1988.

Plaintiff's counsel now petitions the Court for an award of attorney's fees and costs under the EAJA in the amount of $11,353.47, for services provided in connection with this action.

## DISCUSSION

### A. Recovery of Attorney's Fees Under the EAJA

Setting attorney's fees under the EAJA is a two-step process. The Court must first determine whether a claimant may recover attorney's fees under the EAJA. If the answer is in the affirmative, then the Court must determine the appropriate amount of attorney's fees to be awarded.

The EAJA provides, in relevant part:

Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses ... incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, *unless the court finds that the position of the United States was substantially justified* or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A) (emphasis added).

In deciding whether Williams may recover attorney's fees under the EAJA, this Court must answer two questions in relation to the EAJA: (1) what is the "position of the United States"?; and (2) was this position "substantially justified"?

The first question was recently addressed by the Second Circuit, when it wrote,

The term "position of the United States," left undefined in the original [EAJA], was defined in the 1985 law to include both "the position taken by the United States in the civil action," as well as "the action or failure to act by the agency upon which the civil action is based." [28 U.S.C.] § 2412(d)(2)(D). In adding this definition, Congress made clear that for EAJA purposes, a court should inquire into both the underlying agency determination affecting the party, as well as the Government's litigation strategy in defense of that determination.

*Smith by Smith v. Bowen*, 867 F.2d 731, 734 (2d Cir.1989).

In this case, Williams' petition for attorney's fees apparently is based on the claim that the underlying initial decision by the Secretary to deny her widow's insurance benefits was not substantially justified. It is this "position of the United States" that

the Court will now examine under the "substantially justified" test.

■ The Supreme Court has held that "substantially justified" means " 'justified in substance or in the main'—that is justified to a degree that could satisfy a reasonable person. That is no different from the 'reasonable basis in both law and fact' formulation...." *Pierce v. Underwood,* 487 U.S. 552, 565, 108 S.Ct. 2541, 2550, 101 L.Ed.2d 490 (1988) (citations omitted). In addition, the burden is on the Secretary to show that HHS's position was substantially justified. *Green v. Bowen,* 877 F.2d 204, 207 (2d Cir.1989); *Rosado v. Bowen,* 823 F.2d 40, 42 (2d Cir.1987); *Environmental Defense Fund, Inc. v. Watt,* 722 F.2d 1081, 1085 (2d Cir.1983).

■ This Court must therefore determine whether the underlying decision by the Secretary was justified—in HHS's interpretation of both the law and the facts— to a degree that could satisfy a reasonable person.

This Court has already ruled that, as a matter of law, the ALJ must make two sets of findings in deciding whether an individual is entitled to widow's disability benefits. *Williams v. Bowen, supra,* 660 F.Supp. 192.

First, the ALJ must determine whether a widow's injury is included on a "Listing of Impairments" or is equivalent to a listed impairment. "The Secretary will find a widow disabled, and unable to engage in any gainful activity, if her impairment is found in the Listing of Impairments, or if her impairments, considered in combination, are the medical equivalent of a listed impairment." *Id.* at 194 (citing 20 C.F.R. § 404.1578(a)). ALJ Bernstein found that Williams' condition was not on the Listing of Impairments and that "no combination of plaintiff's impairments was medically equivalent to a listed impairment." *Williams v. Bowen, supra,* 660 F.Supp. at 196.

Second, the ALJ must "assess a claimant's residual functional capacity to determine whether he or she can engage in any gainful activity, not merely to determine

whether the impairments complained of do not meet the Listing of Impairments." *Id.* at 195. Here, the Court already has found that, as a matter of law, the ALJ erred in not assessing Williams' residual functional capacity. *Id.* at 196.

The next issue is whether the ALJ's error was "substantially justified." It is true, as defendant argues, that in deciding whether the Secretary's position was substantially justified, the Court must consider the state of the law at the time the Secretary's position was being developed, and not in light of subsequent legal developments. *Dubose v. Pierce,* 761 F.2d 913, 918 (2d Cir.1985), *vacated on other grounds,* 487 U.S. 1229, 108 S.Ct. 2890, 101 L.Ed.2d 924 (1988).

The Secretary asserts that "[a]t the time of the Secretary's initial decision denying plaintiff's claim for benefits, as well as at the time of the litigation, the law regarding the evaluation of claims for widow's disability benefits was *very much unsettled....* It was not until its decision in *Kier v. Sullivan,* 888 F.2d 244 (2d Cir. 1989), that the Second Circuit decided what role [a residual functional capacity] assessment played in a widow's disability benefits case," (Def.'s Mem. at 7 (emphasis added)).

However, Second Circuit case law suggests otherwise. In *Tolany v. Heckler,* 756 F.2d 268 (2d Cir.1985), which was decided more than four months prior to Williams' hearing before ALJ Bernstein, the Second Circuit considered whether the Secretary must evaluate a claimant's residual functional capacity when determining whether the claimant is eligible for widow's disability benefits. Although the Second Circuit remanded the case for the Secretary to consider what role residual functional capacity should play in determining a widow's claim, *id.* at 272, it was clearly of the view that residual functional capacity should be a determinant in assessing disability claims. As the Court wrote,

If a claimant has an impairment that is not listed and is not the medical equivalent of a listed impairment, but the claimant nevertheless is unable to engage in any gainful activity, *it is difficult to see*

*how that person may be denied benefits.* It would seem anomalous if an impairment that is only presumed to be disabling because it is listed results in allowance of benefits, yet an impairment that in fact leaves the claimant without the residual functional capacity to engage in any gainful activity is insufficient to warrant benefits.

*Id.* at 271 (emphasis added).

The *Tolany* court found it inappropriate at the time of its decision "to do more than identify the issue for the Secretary's further consideration", because the Secretary had not, in the course of the *Tolany* litigation, had an opportunity to "enlighten [the Court] as to what role residual functional capacity plays in determining a widow's claim," *id.* at 272, and because the matter had to be remanded to the Secretary for consideration of an additional medical report.

In the wake of *Tolany*, courts in the Second Circuit have ruled that the Secretary must consider a claimant's residual functional capacity. This Court has already held that,

> [i]n the absence of any elaboration from the Secretary on this issue, the decision in *Tolany* obligates the ALJ to assess a claimant's residual functional capacity to determine whether he or she can engage in any gainful activity, not merely to determine whether the impairments complained of do not meet the Listing of Impairments.

*Williams v. Bowen, supra,* 660 F.Supp. at 195 (emphasis added). *See also Rizzo v. Secretary of Health and Human Services,* 708 F.Supp. 520, 522 (W.D.N.Y.1989) ("residual functional capacity must be evaluated before there can be a denial of claim by a widow whose condition does not match to the Listing"); *Brown v. Sullivan,* 724 F.Supp. 76, 78 (W.D.N.Y.1989) (the Secretary has a "legal obligation to assess the plaintiff's residual functional capacity to engage in 'any gainful activity' within the meaning of such phrase under the widow's disability benefits statute.")

While the Secretary argues that the role of residual functional capacity was not set-

tled until *Kier*, the above case law makes clear that, in the wake of *Tolany*, it was unreasonable for the Secretary to make a determination regarding widow's disability benefits without considering the claimant's residual functional capacity. Accordingly, the Secretary's initial position concerning the use of residual functional capacity in assessing Williams' claim was not substantially justified with respect to the law. The plaintiff is thus entitled to recover attorney's fees under the EAJA.

**B. The Amount of Attorney's Fees Which Plaintiff May Recover**

*1. The Proper Hourly Rate Under the EAJA*

█ The subsection of the EAJA pertaining to the calculation of attorney's fees provides that, "[t]he amount of fees awarded ... shall be based upon prevailing market rates for the kind and quality of the services furnished, except that ... (ii) attorney fees shall not be awarded in excess of $75 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee." 28 U.S.C. § 2412(d)(2)(A).

Williams and the Secretary agree that, if attorney's fees are awarded in this case, the $75 per hour benchmark should apply and that this rate should be increased by a cost of living adjustment (COLA). The parties disagree about what the COLA should be in this case.

Plaintiff seeks a COLA based on the July 1990 Consumer Price Index (CPI), the most recent CPI at the time Plaintiff's Memorandum in Support of Petition for Counsel Fees was filed on October 11, 1990. This COLA equates to a 49% increase since enactment of the EAJA in October, 1981. Williams thus seeks attorney's fees at a rate of $111.75 per hour.

Williams uses this recent CPI because she asserts that the appropriate time for a successful claimant to seek an EAJA award in remanded Social Security cases is after attorney's fees have been fixed under

the SSA for plaintiff's counsel's administrative level services. However plaintiff presents no case or statutory authority that adequately supports this assertion. The one case cited by plaintiff, *Sullivan v. Hudson*, 490 U.S. 877, 109 S.Ct. 2248, 104 L.Ed.2d 941 (1989), merely establishes the proposition that "where administrative proceedings are intimately tied to the resolution of the judicial action and necessary to the attainment of the results Congress sought to promote by providing for fees, they should be considered part and parcel of the action for which fees may be awarded." *Id.* at 888, 109 S.Ct. at 2255. Nowhere in *Sullivan v. Hudson* does the Court indicate that the claimant may not seek attorney's fees under the EAJA until attorney's fees have been fixed for counsel's administrative level services.

The Secretary argues that the appropriate COLA should run through December 12, 1988, the date of issuance of the Secretary's favorable decision on Williams' claim for benefits. The Secretary's recommended COLA, which is based on the CPI as of December, 1988, equates to a 36% increase since enactment of the EAJA in October, 1981. Using this methodology, attorney's fees would be reimbursed at a rate of $101.94 per hour.

The Court accepts the Secretary's methodology for calculating the appropriate COLA and will award attorney's fees at a rate of $101.94 per hour. Once the Secretary found that Williams was entitled to widow's disability benefits, in December, 1988, Williams became a "prevailing party" and was thus entitled to petition the Court for attorney's fees under the EAJA. The Court has found no justifiable reason, on the basis of the applicable law or the facts in this case, for Williams waiting almost twenty-two months [1] to file a petition for attorney's fees under the EAJA. *See also Garcia v. Schweiker*, 829 F.2d 396, 402 (3d Cir.1987) (attorney's fees are calculated by "using the closest available Consumer Price Index to the date on which plaintiff became a prevailing party").

### 2. *Dual Fee Applications Under the EAJA and the SSA*

Plaintiff's counsel seeks to be reimbursed under the EAJA for 101 hours of work. Of this time, plaintiff's counsel spent 49 hours preparing for the action before this court and 52 hours seeking benefits on remand.

All of this time is compensable under the EAJA. *Sullivan v. Hudson, supra,* 490 U.S. at 888, 892, 109 S.Ct. at 2255, 2257. However plaintiff's attorney has already been compensated under the SSA, 42 U.S.C. § 406(b), for the 52 hours spent seeking benefits on remand.

Attorneys may seek compensation under both the EAJA and the SSA for time spent on remand in appropriate cases. *Wells v. Bowen*, 855 F.2d 37, 42 (2d Cir.1988). Thus, it is entirely appropriate that Williams' attorney seek compensation under both attorney's fees statutes.

However, if the attorney is compensated under both statutes, the lesser of the two amounts awarded must be returned to the attorney's client. *Id.* In this case, Williams' attorney already has been authorized by the Social Security Administration to receive total compensation of $7,500 for 103.5 hours of services rendered before that agency.[2] Of that time, 51.5 hours were devoted to proceedings before the Secretary prior to remand and 52 hours were spent after remand. Thus, $3,731.88 was awarded by the Secretary for attorney's services rendered prior to remand and $3,768.12 was awarded for services rendered after remand.

As indicated above, Williams has also sought attorney's fees under the EAJA for the 52 hours of services provided after remand. This court has determined to award fees for these services at the rate of $101.94 per hour, or $5,300.88. Because this amount exceeds the $3,768.12 awarded

---

1. The Secretary's decision awarding widow's disability benefits was issued on December 12, 1988. Williams' petition for attorney's fees was not filed until October 11, 1990.

2. This compensation comes directly from Williams' widow's insurance benefits award.

by the Secretary pursuant to 42 U.S.C. § 406(b), Williams' attorney must refund $3,768.12 to Williams.

## CONCLUSION

The position taken by the Secretary in the underlying agency decision was not substantially justified and Williams therefore is entitled to attorney's fees at the rate of $101.94 per hour. Williams' attorney reasonably spent 101 hours on the litigation before this Court and on remand and is entitled to $10,295.94, plus $66.72 in costs, for a total award of $10,362.66.

Finally, this Court directs that the attorney's fees, in the amount of $3,768.12, already received by plaintiff's attorney for services performed on remand under 42 U.S.C. § 406(b), be turned over to plaintiff by plaintiff's counsel.

It is so ordered.